## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELFASCO, INC., | : | Case No. 08-11578 (MFW) |
| | : | |
| a Delaware corporation, | : | **Re: Docket Nos. 488** |
| | : | |
| Debtor. | : | |

## ORDER CONFIRMING PLAN OF LIQUIDATION OF
## DELFASCO, INC. AS AMENDED MARCH 4, 2010

The Plan of Liquidation of Delfasco, Inc., as Amended March 4, 2010, as supplemented or modified (attached hereto as Exhibit A, the "Plan")[1] having been filed with this Court (the "Court") by Delfasco, Inc. ("Delfasco" or the "Debtor"); and the Court having entered, after due notice and a hearing, an order dated March 9, 2010 [*Docket No. 492*] (the "Approval Order"), pursuant to sections 105, 502, 1125, 1126 and 1128 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 3003, 3017 and 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving (i) the Disclosure Statement for Plan of Liquidation of Delfasco, Inc., as Amended March 4, 2010, including all appendices attached thereto [*Docket No.487*] (the "Disclosure Statement"), (ii) notice of the disclosure statement hearing, (iii) transaction termination fee, (iv) procedures for the solicitation and tabulation of votes to accept or reject the Plan, and (v) related notice and objection procedures regarding the hearing on confirmation of the Plan (the "Confirmation Hearing"); and the Disclosure Statement having been transmitted to all holders of Claims in Classes 2, 3, 4, 5, and 6 (collectively, the "Voting Classes") as provided for by the Approval Order; and the Confirmation Hearing having

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan.

been held before the Court on April 9, 2010 after due notice to holders of Claims and Interests and other parties in interest in accordance with the Approval Order, the Bankruptcy Code and the Bankruptcy Rules; and upon all of the proceedings had before the Court, and after full consideration of: (i) the declarations filed with the Court, including (a) the Declaration of Philip Kadlecek in Support of Confirmation of the Chapter 11 Plan of Liquidation of Delfasco, Inc., as Amended Dated March 4, 2010, filed on April 7, 2010 [*Docket No. 531*] (the "Kadlecek Declaration"), (b) the Declaration of Etta R. Wolfe of Potter Anderson & Corroon, LLP, as Voting Agent, Certifying the Methodology for the Solicitation and Tabulation of Votes on and the Results of Voting with Respect to the Plan of Liquidation of Delfasco, Inc., as Amended filed on April 7, 2010 [*Docket No. 528*] (the "Voting Declaration"), (c) Declaration of Jack Goldenberg in Support of Confirmation of the Chapter 11 Plan of Liquidation of Delfasco, Inc., as Amended Dated, filed on April 7, 2010 [*Docket No. 529*] (the "Goldenberg Declaration"), (d) the Declaration of Edward T. Gavin of NHB Advisors, Inc. ("NHB") in Support of Confirmation of the Chapter 11 Plan of Liquidation of Delfasco, Inc., as Amended Dated, filed on April 7, 2010 [*Docket No. 532*] (the "Gavin Declaration"), (e) the Declaration of Publication filed on March 29, 2010 [*Docket No. 522*] (the "Publication Affidavit") and (f) the Affidavit of Service filed on March 12, 2010 [*Docket No. 493*] (the "Affidavit of Service," collectively with the Kadlecek Declaration, the Voting Declaration, the Gavin Declaration, the Goldenberg Declaration and the Publication Affidavit, the "Declarations"), and the testimony contained therein, and (ii) all other evidence proffered or adduced, memoranda and objections filed in connection with, and arguments of counsel made at, the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor,

2

It hereby is DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1.     Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)). The Court has jurisdiction over the Chapter 11 Case pursuant to sections 157 and 1334 of title 28 of the United States Code. Venue is proper pursuant to sections 1408 and 1409 of title 28 of the United States Code. Confirmation of the Plan is a core proceeding pursuant to section 157(b)(2)(L) of title 28 of the United States Code, and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

2.     Commencement of the Chapter 11 Case. On the Petition Date, the Debtor commenced a case under chapter 11 of the Bankruptcy Code. The Debtor has operated its business and managed its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case.

3.     Judicial Notice. The Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed and orders entered thereon. The Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of the Chapter 11 Case.

4.     Burden of Proof. The Debtor has the burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence, and they have met that burden as further found and determined herein.

3

5.      Notice; Transmittal and Mailing of Materials.

(a)      Due, adequate and sufficient notice of the Disclosure Statement, the Plan and the Confirmation Hearing, along with the deadlines for voting on and filing objections to the Plan, has been given to all known holders of Claims and Interests substantially in accordance with the procedures set forth in the Approval Order, and no other or further notice is or shall be required;

(b)      The Disclosure Statement, Plan, Ballots and Approval Order were transmitted and served in compliance with the Approval Order and the Bankruptcy Rules, and such transmittal and service were adequate and sufficient, and no further notice is or shall be required. All procedures used to distribute the solicitation packages to the Voting Classes were fair, and conducted in accordance with the Approval Order, Bankruptcy Code and the Bankruptcy Rules and all other applicable rules, laws and regulations;

(c)      Adequate and sufficient notice of the Confirmation Hearing and other bar dates described in the Approval Order and the Plan have been given in compliance with the Bankruptcy Rules and the Approval Order, and no other or further notice is or shall be required; and

(d)      The filing with the Court and service of the version of the Plan attached as Appendix A to the Disclosure Statement and the disclosure of any further modifications on the record of the Confirmation Hearing, constitute due and sufficient notice of the Plan and all later modifications thereto.

6.      Voting.      Votes on the Plan were solicited after disclosure of "adequate information" as defined in section 1125 of the Bankruptcy Code. As evidenced by the Affidavit of Service and the Voting Declaration, votes to accept the Plan have been solicited and tabulated

4

fairly, in good faith and in a manner consistent with the Approval Order, the Bankruptcy Code and the Bankruptcy Rules.

7.    Plan Modifications (11 U.S.C. § 1127). Subsequent to solicitation, the Debtor made certain non-material modifications to the Plan (the "Plan Modifications"). The Plan Modifications include the following:

(a)    The consensual reduction of the Fee Cap in the amount of $50,000 with such $50,000 reduction being borne solely by NHB and deducted from NHB's Pro Rata share of its Allowed Professional Compensation and Reimbursement Claim under the Fee Cap;

(b)    The consensual reduction of the Trade Claims Payment in the amount of $33,778.90, which reduction accounts for the allowance after the Plan was filed of a section 503(b)(9) Administrative Expense Claim in the amount of $191,925.50 (the "Additional 503(b)(9) Claim") and preserves the projected percentage recovery to holders of remaining Allowed Trade Claims after the Additional 503(b)(9) Claim is removed from Class 4;

(c)    Incorporation of the Retiree Settlement as set forth in Article VIII.D of the Plan;

(d)    The addition of language in Article IV.C of the Plan providing that payment of all Allowed Professional Compensation and Reimbursement Claims of Professional Persons shall be made before the Conversion and Transfer Date and'

(e)    The addition of the following language to the Plan at the request of the Department of Justice on behalf of the Department of Defense: "For clarity, the only federal contracts the debtor is seeking to assume and assign are Department of Defense contracts (the "DOD Contracts"). Notwithstanding any provision in any motion, this Order, the Plan, the APA, or other order to the contrary, the DOD Contracts shall be treated, determined, paid and administered pursuant to all applicable non-bankruptcy law, federal regulations and statutes in the ordinary course of business. Moreover, without limiting the foregoing, nothing shall be interpreted to set cure amounts or to require the government to novate or otherwise consent to the transfer of any federal government contract, agreement or interest. The government's rights to offset or recoup any amounts due under, or relating to, any contracts, agreements or other interests are expressly preserved."

Each of these modifications is reflected in the version of the Plan attached hereto. There may be other non-material modifications made to reflect compromises to plan objections or other appropriate clarifications. Except as provided for by law, contract or prior order of this Court, none of the modifications made since the commencement of solicitation adversely affects the

5

treatment of any Claim against or Interest in the Debtor under the Plan. Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, none of these modifications require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. The Plan as modified shall constitute the Plan submitted for confirmation to the Court.

8.      Notice of Plan Modifications. The filing with the Court of the Plan as modified by the Plan Modifications and the disclosure of the Plan Modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof.

9.      Deemed Acceptance of Plan as Modified. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the Plan Modifications. No holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan Modifications.

10.     Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code, including but not limited to section 1122 and 1123. Accordingly, the Plan satisfies section 1129(a)(1) of the Bankruptcy Code.

11.     Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)). In addition to Administrative Expense Claims, Priority Tax Claims, and Professional Compensation and Reimbursement Claims that need not be classified, the Plan classifies seven (7) Classes of Claims and Interests. The Claims and Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class. Valid business, factual and

6

legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, the classifications were not done for any improper purpose and such Classes do not unfairly discriminate between or among holders of Claims or Interests. Accordingly, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

12. Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Article V of the Plan specifies that Class 1 (Priority Non-Tax Claims) is unimpaired by the Plan. Accordingly, the Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

13. Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Article V of the Plan designate Class 2 (Property Damage Claims), Class 3 (EPA Claim and Liability), Class 4 (Trade Claims), Class 5 (Convenience Claims), Class 6 (TCEQ Claim and Liability), and Class 7 (Equity Security Interests) is impaired, and Article VI of the Plan specifies treatment of all of these Classes of Claims and Interests under the Plan. Accordingly, the Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

14. No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment by the Debtor for each Claim or Interest in each respective Class, unless the holder of a Claim or Interest has agreed to a less favorable treatment. Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

15. Implementation of Plan (11 U.S.C. § 1123(a)(5)). The Plan and the Asset Purchase Agreement (the "APA") as annexed to and incorporated in the Plan and Disclosure Statement provide adequate and proper means for the Plan's implementation. Accordingly, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

16. Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6)). The Equity Security Interest holders shall not receive any payment or distribution on account of their Equity Security

7

Interests. All such Equity Security Interests shall be extingusihed in accordance with the Plan without further action or court order. Accordingly, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

17.     Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). The Plan, as a plan of liquidation, need not designate directors or officers, thereby making section 1123(a)(7) of the Bankruptcy Code inapplicable.

18.     Payment of Individual Earnings (11 U.S.C. § 1123(a)(8)). The Plan, as a plan of liquidation for a corportion, need not provide for payment of individual earnings, thereby making section 1123(a)(8) of the Bankruptcy Code inapplicable.

19.     Provide for the Assumption/Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2)). As set forth in the APA, attached to the Disclosure Statement, the terms of which were incorporated into the Plan, the Debtor shall assume and assign to the Purchaser each of the executory contracts listed on certain schedules to the APA, as such schedule may be amended by the Purchaser at any time before the closing as set forth in section 7.2(c) of the Asset Purchase Agreement (the "Assumed Contracts"). Out of an abundance of caution, on March 23, 2010, the Debtor also filed the Debtor's Omnibus Motion for an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code and Bankruptcy Rule 6006 Authorizing the Assumption and Assignment of Certain Executory Contracts to Delfasco Finance, LLC [*Docket No. 515*] (the "Assumption Motion") for the assumption and assignment of the Assumed Contracts to the Purchaser. The final schedule of Assumed Contracts is attached to the order approving the Assumption Motion. The Plan further provides for the deemed rejection of all executory contrracts, except the Grand Prairie Lease and the Assumed Contracts. Thus, the Plan provides for the assumption/rejection of executory contracts in accordnace with section 1123(b)(2) of the Bankruptcy Code.

8

20.     Additional Plan Provisions (11 U.S.C. § 1123(b)(6)). The Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code.

21.     Bankruptcy Rule 3016(a). The Plan reflects the date it was filed with the Court and identifies the Debtor as Plan proponent. Accordingly, the Plan satisfies Bankruptcy Rule 3016(a).

22.     Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtor, as the proponent of the Plan, has complied with the applicable provisions of the Bankruptcy Code. Accordingly, the Plan satisfies section 1129(a)(2) of the Bankruptcy Code. Specifically, among other things:

        (a)     The Debtor is a proper debtor under section 109(d) of the Bankruptcy Code;

        (b)     The Debtor has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by order of the Court; and

        (c)     The Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Approval Order in (i) transmitting the Disclosure Statement, the Plan and related documents and notices and (ii) soliciting and tabulating votes on the Plan.

23.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtor's good faith is evident from the facts and records of this Chapter 11 Case, the Disclosure Statement and the hearing thereon, the Declarations, and the record of the Confirmation Hearing and other proceedings held in this Chapter 11 Case. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the estate for distribution to all parties in interest of the Debtor.

9

24. Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by the Debtor for services or for costs and expenses in or in connection with the Chapter 11 Cass, or in connection with the Plan and incident to the Chapter 11 Case, has been approved by, or is subject to the approval of, the Court as reasonable. Accordingly, the Plan satisfies section 1129(a)(4) of the Bankruptcy Code.

25. Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)). The Debtor is liquidating and will have no directors, officers or employees. Accordingly, section 1129(a)(5) of the Bankruptcy Code is inappliable.

26. No Rate Changes (11 U.S.C. § 1129(a)(6)). The Plan does not provide for the continuing operation of the Debtor. Accordingly, section 1129(a)(6) of the Bankruptcy Code is inapplicable.

27. Best Interests of Creditors (11 U.S.C. § 1129(a)(7)). The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The Declarations, the Disclosure Statement, the Plan, all related documents and exhibits, and other evidence proffered or adduced at the Confirmation Hearing: (a) are persuasive and credible; (b) have not been controverted by other evidence; and (c) establish that each holder of an impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

28. Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Class 1 is unimparied and is conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Classes 2, 3, 4, 5 and 6 have each voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code. Class 7 is not entitled to receive or retain any property under

10

the Plan and, therefore, is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to Class 7, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to such Class. Accordingly, the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to such Class 7.

29. <u>Treatment of Administrative and Priority Tax Claims (11 U.S.C. § 1129(a)(9))</u>. The treatment of Administrative Claims pursuant to Article VI.A of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Priority Tax Claims pursuant to Article VI.B of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

30. <u>Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))</u>. Classes 2, 3, 4, 5 and 6 are each impaired Classes and have voted to accept the Plan, without including any acceptance of the Plan by any insider. As such, there is at least one Class of Claims against the Debtor that is impaired under the Plan and has accepted the Plan, determined without including any acceptance of the Plan by any insider. Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

31. <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The Disclosure Statement, the Declarations and other evidence proffered or adduced at the Confirmation Hearing regarding feasibility: (a) is persuasive and credible; (b) has not been controverted by other evidence; and (c) establishes that the Debtor has no objective to continue or engage in the active conduct of a trade or business after rhe sale of the Acquired Assets (as defined in the APA) to the Purchaser, therefore, confirmation of the Plan followed by the Conversion and Transfer and a subsequent winddown

11

of the Chapter 7 Estate is not likely to be followed by liquidation, to the extent not already provided for in the Plan, or the need for further financial reorganization of the Debtor. Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

32. Payment of Fees (11 U.S.C. § 1129(a)(12)). As provided in Article XIV.E of the Plan, all fees payable pursuant to section 1930(a) of title 28 of the United States Code, as determined by the Court, have been paid or shall be paid for each quarter on or prior to the Conversion and Transfer Date. Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

33. Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). The settlement by and among the Debtor and William T. Ramsey, Nancy Ramsey, David B. Lilly, Jr., and Sandy Lilly (the "Retiree Settlement"), provides for the consensual modification of retiree benefits pursuant to section 1114(e)(1)(B) of the Bankruptcy Code and the release of any and all claims related thereto. The Retiree Settlement falls well within the range of reasonableness and is in the best interest of the Debtor and its estate.

34. Payment of Domestic Support Obligations (11 U.S.C. § 1129(a)(14)). Section 1129(a)(14) does not apply in this Chapter 11 Case because the Debtor is not required to pay any domestic support obligations.

35. Objection to the Plan of an Individual (11 U.S.C. § 1129(a)(15)). Section 1129(a)(15) does not apply in this Chapter 11 Case because the Debtor is not an individual.

36. Transfers of Property (11 U.S.C. § 1129(a)(16)). Section 1129(a)(16) does not apply in this Chapter 11 Case because the Debtor is a moneyed, business or commercial corporation.

12

37. <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>. Based upon the evidence proffered or adduced at the Confirmation Hearing, the Disclosure Statement and all other evidence before the Court, the Plan does not discriminate unfairly and is fair and equitable with respect to Class 7, as required by sections 1129(b)(1) and (2) of the Bankruptcy Code. Thus, the Plan may be confirmed notwithstanding the Debtor's failure to satisfy section 1129(a)(8) of the Bankruptcy Code. Upon confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of all Classes including those of Class 7.

(a) <u>The Plan Does Not Unfairly Discriminate Against the Rejecting Class</u>. The Plan does not unfairly discriminate against Class 7. There is no other Class of the same priority as Class 7 and, therefore, there is no disparate treatment between similar Classes. Class 7 consists of Equity Security Interests in the Debtor that shall not receive nor retain any property under the Plan on account of those Interests. Accordingly, the Plan satisfies section 1129(b)(1) of the Bankruptcy Code.

(b) <u>The Plan is Fair and Equitable</u>. The Plan is fair and equitable in that no holder of a Claim or Interest that is junior to Class 7 will receive or retain under the Plan on account of such junior Claim or Interest any property. Therefore, the Plan satisfies section 1129(b)(2)(C)(ii) of the Bankruptcy Code.

38. <u>Only One Plan (11 U.S.C. § 1129(c))</u>. The Plan is the only plan filed in this Chapter 11 Case. Accordingly, section 1129(c) of the Bankruptcy Code is inapplicable.

39. <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan, as evidenced by its terms, is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

13

40.   Good Faith Solicitation (11 U.S.C. § 1125(e)).   Based on the record before this Court in this Chapter 11 Case, the Debtor, the Purchaser, the Owners and the Committee and the members thereof in their capacity as such, and any of their repsective officers, directors, employees or other agents, financial advisors, attorneys and accountants (collectively, the "Exculpated Persons") have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code and the Exculpated Persons referenced in Article XII.B. of the Plan are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article XII.B of the Plan.

41.   Satisfaction of Confirmation Requirements.   Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

42.   Implementation.   All documents and agreements necessary to implement the Plan, including, without limitation, the APA, and all other relevant and necessary documents described in the Plan, have been negotiated in good faith at arm's length, are in the best interests of the Debtor and shall upon execution be valid, binding and enforceable documents and agreements not in conflict with any federal or state law.

43.   Specific Findings with Respect to the Sale.   The Purchaser is a good faith purchaser of the Acquired Assets subject to the APA and is entitled to the protection of 363(m) of the Bankruptcy Code. The APA is a bona fide, arms-length transaction that represents the highest and best offer for the Acquired Assets. Approval of the sale contemplated by the APA is in the best interests of the estate and all creditors. Although the APA has been or will be

14

amended since the solicitation of votes occurred, the resulting modifications to the Plan are not material to any class of creditors or Interest holders and does not adversely affect any such creditor or Interest holder. Neither the Debtor nor the Purchaser have engaged in any conduct that would cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code and any such claims under section 363(n) are hereby released, waived and discharged.

44.     Good Faith. The Exculpated Persons will be acting in good faith if they proceed to (a) consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby and (b) take the actions authorized and directed by this Confirmation Order.

45.     Assumption or Rejection of Executory Contracts and Unexpired Leases. The Debtor has exercised reasonable business judgment in determining whether to assume or reject each of the executory contracts and unexpired leases as set forth in Article XIII of the Plan. Each assumption or rejection of an executory contract or unexpired lease as provided in Article XIII of the Plan shall be legal, valid and binding upon the Debtor, the Purchaser and all non-Debtor parties to such executory contracts or unexpired leases to the same extent as if such assumption or rejection had been effectuated pursuant to an appropriate authorizing order of the Court entered before the Confirmation Date under section 365 of the Bankruptcy Code. For clarity, the only federal contracts the debtor is seeking to assume and assign are the DOD Contracts. Notwithstanding any provision in any motion, this Order, the Plan, the APA, or other order to the contrary, the DOD Contracts shall be treated, determined, paid and administered pursuant to all applicable non-bankruptcy law, federal regulations and statutes in the ordinary course of business. Moreover, without limiting the foregoing, nothing shall be interpreted to set cure amounts or to require the government to novate or otherwise consent to the transfer of any

15

federal government contract, agreement or interest. The government's rights to offset or recoup any amounts due under, or relating to, any contracts, agreements or other interests are expressly preserved.

46. Adequate Assurance. The Debtos has cured or provided adequate assurance that the Debtor will cure, defaults (if any) under or relating to each of the assumed executory contracts and unexpired leases that are being assumed by the Debtor pursuant to the Plan.

47. Transfers by Debtor; Vesting of Assets. All transfers of property of the Estate, including, without limitation, the transfer of the Acquired Assets pursuant to the APA, shall be free and clear of all Liens, charges, Claims, encumbrances and other interests, except as expressly provided in the Plan or this Confirmation Order. Specifically and without limitiation of the foregoing, the transfer of the Acquired Assets pursuant to the APA is free and clear of any Liens, charges, Claims, encumbrances of PNC Bank, N.A. or any successor thereto as shown at Deed Book 153A, page 660, Register's Office for Greene County, Tennessee and in any related documents. Pursuant to the terms of the Plan, the Chapter 7 Estate Assets shall vest in the Chapter 7 Trustee upon the Conversion and Transfer Date. Such vesting does not constitute a voidable transfer under the Bankruptcy Code or applicable nonbankruptcy law.

48. Conditions to Consummation. The conditions to the Effective Date are set forth in Article IX.A of the Plan. Such conditions may be waived at any time by a writing signed by an authorized representative of the Debtor, the Committee, TCEQ, EPA and the Purchaser without notice or order of the Court or any further action.

49. Conditions to the Occurrence of the Conversion and Transfer Date. The conditions to the Conversion and Transfer Date are set forth in Article IX.B of the Plan. Such conditions shall have been met no later than 120 days after the Effective Date, provided

16

however, that any party in interest may file a motion with this Court to extend such deadline for good cause shown, Alternatively, such conditions may be waived at any time by a writing signed by an authorized representative of the Debtor, the Committee, TCEQ, EPA and the Purchaser without notice or order of the Court or any further action

50.     Retention of Jurisdiction.  The Court properly may retain jurisdiction over the matters set forth in Article XIV.A of the Plan.

51.     Exculpation.  The exculpation provisions set forth in Article XII of the Plan constitute good faith compromises and settlements of the matters covered thereby.  Such compromises and settlements are made in exchange for consideration, are in the best interests of the Debtor, the Chapter 11 Estate, and holders of Claims and Interests, are fair, equitable, reasonable, and are integral elements of the resolution of this Chapter 11 Case in accordance with the Plan.

## DECREES

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

52.     Confirmation.  The Plan is approved and confirmed under section 1129 of the Bankruptcy Code.  The APA and the Settlement and Release Agreements are incorporated by reference into and are integral parts of the Plan.

53.     Objections.  All objections that have not been withdrawn, waived or settled, and all reservations of rights pertaining to confirmation of the Plan, are overruled on the merits.

54.     Provisions of Plan and Order Nonseverable and Mutually Dependent.  The provisions of the Plan, the APA and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

17

55. Settlement. The Retiree Settlement is hereby approved and the Debtor is authorized to take any and all actions necessary to effectuate the transactions contemplated thereby.

56. APA. The APA filed with the Court on March 4, 2010, and any amendments, modifications, and supplements thereto, the sale contemplated thereby and all documents and agreements related thereto (including all exhibits and attachments and documents referred to therein), and the execution, delivery and performance thereof by the Debtor, is authorized and approved. Without further order or authorization of this Court, the Debtor is authorized and empowered to make all modifications to all such documents that are not inconsistent with the Plan and take any and all actions reasonably necessary or appropriate to consummate the transactions contemplated by the APA (the "Sale") and the Plan, including, but not limited to, conveyance of the Acquired Assets to the Purchaser. Once finalized and executed, the APA and all other documents contemplated by the Plan (including, without limitation, any and all pledge and security agreements, intellectual property security agreements, deeds of trust, mortgages, guarantees, and subordination agreements) shall constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all liens and other security interests purported to be created thereby.

57. Good Faith Purchaser. The Purchaser is a good faith purchaser within the meaning of Sections 363 and 1123 of the Bankruptcy Code and all facets of transactions contemplated under the APA, including the purchase of the Acquired Assets, have been proposed, conducted, adequately disclosed, negotiated, and agreed to in good faith within the meaning of, and pursuant to, Sections 363 or 1123 of the Bankruptcy Code and, as such, the

18

Purchaser is entitled to the full protections set out in this Confirmation Order, the Plan and the Bankruptcy Code which protections shall survive the conversion of the Chapter 11 Case on the Conversion and Transfer Date.

58.     Free and Clear.     This Confirmation Order is and shall be effective as a determination that, upon Closing, and except as specifically set forth in this Confirmation Order, all existing claims to the Acquired Assets have been and are adjudged and delcared to be unconditionally terminated. The transfer of the Acquired Assets to the Purchaser is free and clear of all Liens, Claims and liabilities (other than Assumed Liabilities), including any Claims or liabilities relating to or arising out of the Excluded Liabilities (including any indebtedness, liabilities or obligations arising out of, relating to or otherwise in respect of any Environmental and Safety Laws or alleged breach thereof, including any indebtedness, liabilities or obligations arising out of, relating to or otherwise in respect of the Grand Prairie Property, whether asserted by the EPA, the TCEQ or any other Person or Government Entity), with all such Liens, Claims and liabilities to attach to the net proceeds of the Sale solely as obligations of the Debtor in their order of priority with the same validity, force and effect which they had against the Acquired Assets, subject to the rights, Claims, defenses and objections, if any, of the Debtor and all interested parties with respect to such Liens, Claims and liabilities. Specifically and without limitiation of the foregoing, the transfer of the Acquired Assets pursuant to the APA is free and clear of any Liens, charges, Claims, encumbrances of PNC Bank, N.A. or any successor thereto as shown at Deed Book 153A, page 660, Register's Office for Greene County, Tennessee and in any related documents;

59.     No Assumption.     The Purchaser is not assuming and shall not be liable or responsible for any Claims and liabilities other than Assumed Liabilities as successor to the

19

Debtor, or otherwise. All such persons or entities, including any federal, state or local Government or agency, department or instrumentality thereof, holding any such Claims or liabilities are enjoined from asserting by lawsuit or otherwise any such Claims or liabilities against Purchaser, the Acquired Assets and the Business (as defined in the APA) which such persons or entities had, have or may have against the Debtor, the Acquired Assets and the Business, on any basis whatsoever including under theories of successor liability or pursuant to Bankruptcy Code section 506(c), other than Assumed Liabilities. The Refused Assets are and shall be excluded from the Acquired Assets, such that the Purchaser shall have no liability in connection with, arising out of or otherwise in respect of the Refused Assets;

60. Grand Prairie Property. Notwithstanding anything contained in the APA, including any exhibits, amendments, modifications and supplements thereto, the treatment of the TCEQ Claim and Liability and the disposition of the Grand Prairie Property shall be governed solely by and in accordance with the Plan, this Confirmation Order and applicable bankruptcy law. In addition, the terms 'Business', 'Facilities', and 'Real Property' as defined in the APA shall specifically exclude the Grand Prairie Property.

61. Waiver of the Stay. This Confirmation Order shall be a Final Order and immediately effective and shall not be stayed for ten (10) days after entry as permitted by Fed. R. Bankr. P. 6004(g);

62. Dissolution of the Committee. As of the later of (i) the Effective Date, and (ii) the date on which all objections to General Unsecured Claims have been filed and prosecuted and/or otherwise resolved pursuant to Final Order, the Committee shall be dissolved, and all members of the Committee and the Committee's Professionals shall be discharged from their duties as members of, and professionals retained by, the Committee. Notwithstanding the

20

dissolution of the Committee, the members of the Committee retain the right to seek reimbursement of expenses (in the case of members of the Committee) and final compensation (as to professionals retained by the Committee). Neither the members of the Committee, nor any of its retained professionals, employees or agents shall be liable for any act taken, suffered or omitted to be taken in their capacity as members of the Committee or in reliance on any provision of the Plan, except for acts of gross negligence or willful misconduct (which gross negligence or willful misconduct must be determined by a Final Order in a court of competent jurisdiction), in the performance of duties for the Committee. Notwithstanding anything herein to the contrary, in no event shall any member of the Committee or its professionals be liable to any party on account of the performance of duties for the Committee in an amount that exceeds the fees and expenses such Committee member or professional has received for its service on or to the Committee. Notwithstanding anything to the contrary herein, if the Committee remains in existence after the Effective Date to prosecute and/or resolve pending objections to General Unsecured Claims, an amount equal to $10,000 shall be reserved from the Fee Cap to pay the reasonable fees and expenses incurred by Committee Chapter 11 Case Professionals to prosecute and/or resolve pending objections to General Unsecured Claims (the "Claims Objection Reserve"), which fees and expenses shall not be subject to Bankruptcy Court approval. Any unused portion of the Claims Objection Reserve shall be distributed among Professional Persons subject to the Fee Cap pursuant to the terms of the Fee Cap Agreement.

63.     Solicitation and Notice. Notice of the Confirmation Hearing complied with the terms of the Approval Order, was appropriate and satisfactory based on the circumstances of the Chapter 11 Case and was in compliance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.     The solicitation of votes on the Plan complied with the solicitation

21

procedures in the Approval Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case and was in compliance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

64.     Plan Classifications Controlling. The classification of Claims and Interests for purposes of distributions made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the creditors in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes; and (c) shall not be binding on the Debtor.

65.     Effects of Confirmation; Immediate Effectiveness; Successors and Assigns. The stay provided by Bankruptcy Rule 3020(e) shall not apply to this Confirmation Order. Immediately upon occurrence of the Effective Date, this Confirmation Order and the terms of the Plan shall be deemed binding upon: (a) the Debtor; (b) all holders of Claims against and Interests in the Debtor, whether or not impaired under the Plan and whether or not, if impaired, such holders accepted the Plan; (c) each Person acquiring property under the Plan; (d) any other party in interest; (e) any Person making an appearance in the Chapter 11 Case; and (f) each of the foregoing's respective heirs, successors, assigns, agents, attorneys, affiliates and beneficiaries.

66.     Cancellation of Notes and Stock. Upon the occurrence of the Effective Date, except to the extent otherwise provided in this Confirmation Order or the Plan, all notes, instruments, certificates and other documents evidencing ownership of Equity Security Interests in the Debtor shall be cancelled, and the obligations of the Debtor thereunder and in any way

22

related thereto shall be fully satisfied, released and discharged in exchange for the treatment provided under the Plan for Allowed Claims or Interests, if any, arising thereunder.

67. Distributions Under the Plan. All distributions under the Plan shall be made in accordance with Article X of the Plan.

68. Unclaimed Distributions. All distributions under the Plan that remain unclaimed for a period of one hundred eighty (180) days after such Distribution has been made (or after such delivery has been attempted) shall indefeasibly revert to the Chapter 7 Estate. Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed distributions) shall be automatically discharged and forever barred, notwithstanding any federal or state escheat laws or regulations to the contrary.

69. Disputed Claims. The provisions of Article XVII of the Plan, including, without limitation, the provisions governing procedures for resolving Disputed Claims, are fair and reasonable and are approved.

70. Approval of Assumption or Rejection of Executory Contracts. Entry of this Confirmation Order shall, subject only to the occurrence of the Effective Date, constitute the approval, (a) pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Article XIII of the Plan, and (b) pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of all other executory contracts and unexpired leases as set forth in the Plan other than the Grand Prairie Lease. For clarity, the only federal contracts the debtor is seeking to assume and assign are the DOD Contracts. Notwithstanding any provision in any motion, this Plan, the APA, or other order to the contrary, the DOD Contracts shall be treated, determined, paid and administered pursuant to all applicable non-bankruptcy law, federal regulations and statutes in

23

the ordinary course of business. Moreover, without limiting the foregoing, nothing shall be interpreted to set cure amounts or to require the government to novate or otherwise consent to the transfer of any federal government contract, agreement or interest. The government's rights to offset or recoup any amounts due under, or relating to, any contracts, agreements or other interests are expressly preserved.

71. Inclusiveness. Unless otherwise specified in the Plan, the APA or a notice sent to a given party, each executory contract and unexpired lease shall include any and all modifications, amendments, supplements, restatements and other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed thereon, provided that such agreement has not expired pursuant to its terms.

72. Notice of Assumption and Rejection of Executory Contracts and Unexpired Leases. The filing of the Plan and the APA and the publication of the Confirmation Hearing Notice and notice of the entry of this Confirmation Order provide adequate notice of the assumption and rejection of executory contracts and unexpired leases pursuant to Article XIII of the Plan. Therefore, no other or further notice is required.

73. Rejections. As provided in Article XIII of the Plan, all executory contracts and unexpired leases not specifically assumed by the Debtor shall be deemed rejected pursuant to section 365 of the Bankruptcy Code other than the Grand Prairie Lease. All of the rejected contracts and leases shall be rejected only to the extent that any such contract or lease constitutes an executory contract or unexpired lease. This Confirmation Order shall constitute an order

24

approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the Confirmation Date.

74.     Rejection Claims and Bar Date. Claims arising out of the rejection of any executory contract or unexpired lease pursuant to Article XIII of the Plan must be filed with the Debtor's counsel, no later than the later of (a) thirty (30) calendar days after the Confirmation Date, or (b) thirty calendar days after the entry of an order rejecting such executory contract or unexpired lease. Any Claim not filed within such time period shall be forever barred and shall not be enforceable against the Debtor, its properties, successor and assigns, or the Chapter 7 Estate. The Debtor or the Committee shall have the exclusive right to object to any Claim arising out of the rejection of an executory contract or unexpired lease pursuant to the terms of the Plan.

75.     Injunction. Except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims or Causes of Action against or Interests in the Debtor or the Chapter 11 Estate that arose prior to the Effective Date, including, without limitation, the EPA Claim and Liability and the TCEQ Claim and Liability, except with regard to the Chapter 7 Estate Liabilities, are, with respect to such Claim, Interest or Cause of Action, permanently enjoined from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, any of its property, and of its agents, successors and assigns, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing persons or entities, including, without limitation, the Purchaser, (b) enforcing, levying, attaching, collecting or otherwise recovering by

25

any manner or means, whether directly or indirectly, on any judgment, award, decree or order against the Debtor, any of its property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing persons or entities, or any property of any such transferee or successor-in-interest, including, without limitation, the Purchaser, (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance or Lien of any kind against the Debtor or any of its property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing persons or entities, including, without limitation, the Purchaser, provided however, that nothing in the Plan releases, nullifies or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property arising after the Effective Date. Further, notwithstanding any provision of the Plan to the contrary, nothing herein shall preclude any environmental regulatory authority from seeking injunctive relief against the Chapter 7 Trustee or the Chapter 7 Estate in any court of competent jurisdiction..

76.     Term of Injunction or Stays. Unless otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Case under sections 105(a) or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Conversion and Transfer Date.

77.     Exculpation.

        a.      Other than as provided for in the Plan, none of the Debtor, the Purchaser, the Owners, or the Committee and the members thereof in their capacity as such, nor any of their respective officers, directors, employees or other agents, financial advisors, attorneys, and accountants shall have any liability to any holder of any Claim or Interest, including, without

26

limitation, the EPA Claim and Liability and the TCEQ Claim and Liability, for any act or omission in connection with or arising out of the negotiation, preparation and pursuant of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, the Chapter 11 Case or the property to be distributed under the Plan. Nothing in this section shall (i) be construed to exculpate any entity from fraud, gross negligence, willful misconduct, malpractice, criminal conduct, misuse of confidential information that causes damages, or *ultra vires* acts; or (ii) limit the liability of the professionals of the Debtor and the Committee to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility.

      b.      Except as expressly provided herein, nothing in any section of this Plan shall effect a release in favor of any Person other than the Debtor or the Purchaser, or any of their respective financial advisors, attorneys, and accountants with respect to any debt owed to the United States Government, any state, city or municipality for any liability of such Person arising under (i) the Internal Revenue Code, or any state, city or municipal tax code, (ii) the environmental laws of the United States, any state, city or municipality or (iii) any criminal laws of the United States, any state, city or municipality.

      78.      Preservation of Causes of Action.

      a.      In consideration of the compromises made by the Committee in negotiating the Plan, on the Confirmation Date, the Debtor, on behalf of itself and the Chapter 11 Estate shall be deemed to have waived any and all Avoidance Actions the Chapter 11 Estate may have against holders of Claims. The waiver of Avoidance Actions shall be binding on the Debtor's and the Chapter 11 Estate's successors and assigns, including, without limitation, the Chapter 7 Estate, the Chapter 7 Trustee and any successors thereto.

27

b. The Chapter 7 Trustee may enforce only those Claims, rights or Causes of Action expressly included among the Chapter 7 Estate Assets, and any recovery therefrom shall inure to the benefit of the Chapter 7 Estate and become a Chapter 7 Estate Asset. By way of example, and not limitation, the Chapter 7 Estate shall retain any causes of action not specifically released under the Plan for environmental claims or liabilities related to the Grand Prairie Property against any third parties; provided, however, that any claims, rights, or causes of action against the United States of America or the State of Texas or any agencies or instrumentalities relating to any environmental law or regulation or any claim alleged with regard to the automatic stay under section 362 of the Bankruptcy Code are fully waived, extinguished and released under the Plan.

79. Unavoidability of Chapter 11 Payments and Payments Made Pursuant to the Plan. All payments made by the Debtor during the Chapter 11 Case or pursuant to the Plan on or before the Conversion and Transfer Date are final and unaviodable by any party, including, without limitation, the Chapter 7 Trustee or any successor thereto. Except as otherwise set forth in the Plan, all Causes of Action related to such Claims and/or the payment thereof are fully waived, extinguished and released.

80. Retention of Jurisdiction. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order or the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction as provided in Article XIV of the Plan.

81. Enforceability of Plan Documents. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan, and subject to their execution, all Plan-related documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

28

82.    Section 1146 Exemption.  To the fullest extent permitted under section 1146 of the Bankruptcy Code, the execution, delivery or recording of an instrument of transfer under the Plan, or the revesting, transfer or sale of any real or other Property of the Debtor, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

83.    Authorization to Modify.  Without need for further order or authorization of the Court, the Debtor or the parties granted consent rights pursuant to the Plan are authorized and empowered to make any and all modifications to any and all documents included as part of the Plan or otherwise contemplated by the Plan that are consistent with the Plan.

84.    Effectiveness of All Actions.  All actions authorized to be taken pursuant to the Plan shall be effective on, or prior to the Conversion and Transfer Date pursuant to this Confirmation Order, without further application to, or order of the Court, or further action by the Debtor.

85.    Approval of Consents.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the APA, the Disclosure Statement, and any related documents, instruments or agreements, and any amendments or

29

modifications thereto. Nothwithstanding anything in this Confirmation Order to the contrary, the Debtor and the Purchaser shall obtain any necessary consents required for the assumption and assignment of the Assumed Contracts as set forth on Schedule 8.2(f) of the APA.

86. <u>Disclosure: Agreements and Other Documents</u>. The Debtor has disclosed all material facts regarding: the APA and all contracts, leases, instruments, releases, indentures and other agreements related to the APA.

87. <u>Administrative Claims Bar Date</u>. The first Administrative Bar Date was set by Bankruptcy Court order as February 2, 2009, and applied to all Administrative Expense Claims accruing between the Petition Date and November 30, 2008. All other Administrative Expense Claims arising from November 30, 2008 through the Effective Date shall be filed within thirty (30) days of the Effective Date or any Person asserting such Claims shall be forever barred from asserting such Administrative Expense Claims against the Debtor, its properties, successors and assigns, or the Chapter 7 Estate.

88. All requests for payment of an Administrative Claim (other than a Professional Compensation and Reimbursement Claim) must be filed with and served on counsel for the Debtor, the Purchaser, and the Committee no later than 30 days after the Effective Date (the "<u>Final Administrative Claims Bar Date</u>"). Any request for payment of an Administrative Claim pursuant to this paragraph that is not timely filed and served shall be disallowed automatically without need for any objection by the Debtor. The Debtor or the Committee may settle an Administrative Claim without further Court approval.

89. <u>Bar Date for Professional Compensation and Reimbursement Claims</u>.

a. All Persons seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective

30

Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5) of the Bankruptcy Code shall (a) file, on or before the date that is thirty (30) days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (b) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court in accordance with the order relating to or Allowing any such Professional Compensation and Reimbursement Claim, provided however, that the aggregate amount of payments to Professional Persons subject to the Fee Cap shall not exceed the Fee Cap. Holders of such Professional Compensation and Reimbursement Claims that are required to file and serve applications for final allowance of their Professional Compensation and Reimbursement Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such claims against the Debtor, its properties, successor and assigns, or the Chapter 7 Estate. Objections to any Professional Compensation and Reimbursement Claims must be filed and served on the Notice Parties and the Professional Person(s) to whom the objection(s) is/are directed no later than twenty (20) days after the date on which the relevant application(s) for final allowance of such Professional Compensation and Reimbursement Claims was/were filed and served.

          b.     Notwithstanding the foregoing, to the extent that the Allowed Professional Compensation and Reimbursement Claims of Professional Persons exceed the Fee Cap, the Professional Persons (other than Quantum Management (U.S.), Inc., Thompson & Knight LLP, Saul Ewing LLP or Horty & Horty, whose fees shall not be reduced) shall allocate any shortfall in the payment of their Allowed Professional Compensation and Reimbursement Claims among themselves Pro Rata in reduction of their respective fees or according to such other terms as such Professional Persons may agree.

31

90. <u>Binding Effect</u>. The Plan shall be binding upon and inure to the benefit of the Debtor, the Chapter 11 Estate, the Purchaser, the Chapter 7 Estate, the Chapter 7 Trustee, all present and former holders of Claims or Interests, and the heirs, executors, administrators, successors and assigns of each of the foregoing.

91. <u>Governing Law</u>. Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

92. <u>Notice of Entry of Confirmation Order, Final Administrative Claims Bar Date, and Effective Date</u>. Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), the Debtor shall file and serve notice of entry of this Confirmation Order, the Final Administrative Claims Bar Date, and occurrence of the Effective Date in the form attached hereto as Exhibit B (the "<u>Notice of Confirmation</u>") on all holders of Claims and Interests, the United States Trustee for the District of Delaware and other parties in interest by causing the Notice of Confirmation to be delivered to such parties by first-class mail, postage prepaid, within ten (10) Business Days after the Effective Date. The Notice of Confirmation shall also be published in *The USA Today* (National Edition). Such notice is adequate under the particular circumstances and no other or further notice is necessary. The Notice of Confirmation also shall serve as the notice of the Final Administrative Claims Bar Date, and as the notice of the Effective Date. The form of the Notice of Confirmation and the service thereof is approved as sufficient for the purposes as set forth herein.

32

93. The Conversion and Transfer Order. Upon the occurrence or waiver of the conditions precedent to the Conversion and Transfer Date, the Debtor shall submit a form of order substanttially in the form attached hereto as Exhibit C (the "Conversion and Transfer Order") to the Court under Certification of Counsel. Upon the Court's entry of the Conversion and Transfer Order, the Debtor shall serve a copy of the Conversion and Trasnfer Order on all holders of Claims and Interests, the United States Trustee for the District of Delaware and other parties in interest by first-class mail, postage prepaid, within ten (10) Business Days after the entry of the Conversion and Transfer Order.

94. Substantial Consummation. Upon the occurrence of the Conversion and Transfer Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

95. References to Plan Provisions. The failure to include or specifically describe or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety.

96. Findings of Fact. The determinations, findings, judgments, decrees and orders set forth and incorporated herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

33

97.     Conflicts Between Confirmation Order and Plan. The provisions of the Plan and

of this Confirmation Order shall be construed in a manner consistent with each other so as to

effect the purposes of each; *provided, however*, that if there is determined to be any

inconsistency between any Plan provision and any provision of this Confirmation Order that

cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this

Confirmation Order shall govern and any such provision of this Confirmation Order shall be

deemed a modification of the Plan and shall control and take precedence.

Dated: April 9, 2010
       Wilmington, Delaware

By: /s/ _____
    UNITED STATES BANKRUPTCY JUDGE

34